# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

KATHY S. PETERS,

    Plaintiff,

v.

                                              Civil Action 2:18-cv-197
                                              Judge George C. Smith
                                              Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Kathy S. Peters ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DSI") and supplemental security income ("SSI"). This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Response in Opposition (ECF No. 21), and the administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

          **I.    BACKGROUND**

Plaintiff protectively filed her applications for DIB and SSI on October 16, 2014, alleging an onset date of disability of August 20, 2008. Plaintiff subsequently amended her alleged onset date to June 4, 2015, her date last insured. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff sought a hearing before an administrative law judge.

Administrative Law Judge Jason C. Earnhart (the "ALJ") held a hearing on May 10, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational expert Eric W. Pruitt (the "VE") and medical expert Jonathan W. Nusbaum, M.D. (the "ME"), also appeared and testified at the hearing.

On August 10, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 11-24.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 4, 2015, the amended alleged onset date. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease, stenosis and radiculopathy of the thoracic and lumbar spine, obesity, hypertension, chronic obstructive pulmonary disease,

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

depression, and anxiety.  The ALJ also found that Plaintiff had the non-severe impairments of dysphagia, carpal tunnel syndrome, headaches, and GERD.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the [Plaintiff] can sit for 1 hour at a time, at which point she must stand for a minute or two before returning to the seated position.  The [Plaintiff] can sit for a total of 6 hours in an 8-hour workday.  She can stand and/or walk for 15 minutes at one time for a total of 2 hours in an 8-hour workday.  The [Plaintiff] needs a cane for ambulation.  The [Plaintiff] can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl.  She can tolerate frequent exposure to humidity, atmospheric conditions, and pulmonary irritants, but is precluded from extreme temperatures, climbing ladders, ropes, and scaffolds, and hazards, such as dangerous machinery, unprotected heights, and commercial driving.  Mentally, the [Plaintiff] can perform jobs with no fast production pace.  She can occasionally interact with supervisors and coworkers, but is precluded from interaction with the public.  The [Plaintiff] can also tolerate occasional changes in the work setting.

(R. at 16.)

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy.  (R. at 22-23.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 24.)

On January 8, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.  Plaintiff then timely commenced the instant action.

In her Statement of Errors (ECF No. 15), Plaintiff asserts that the ALJ erred by "cherry picking" or selectively citing record evidence to arrive at his RFC determination and ignored evidence that supported greater limitations. The Commissioner counters that the ALJ reasonably assessed the record evidence in arriving at Plaintiff's RFC assessment.

## II. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d

4

270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## III. ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because he "cherry picked" or selectively cited medical records and activities of daily living to support his conclusions. The undersigned disagrees and **RECOMMENDS** that Plaintiff's contention of error be **OVERRULED**.

### A. Medical Records

Plaintiff asserts that the ALJ neglected to address certain medical records related to her lumbar spine impairments that supported greater physical limitations in her RFC. More specifically, Plaintiff asserts that the ALJ ignored Certified Nurse Practitioner Jami Easterday's ("CNP Easterday") treatment notes stating that Plaintiff had obesity, increased pain with spinal flexion, increased pain with straight-leg raising, 1+ pitting edema of the extremities, increased pain with Patrick's test, limited range of motion, antalgic gait, positive Patrick's test, and positive straight-leg raise test. (Pl.'s Statement of Errors at 15-16, ECF No. 15 (citing R. at 348, 343, 381, 409-410, 535, and 523).) Plaintiff also asserts that the ALJ erroneously stated that CNP Easterday noted no gait problems from September 2015 to June 2016. (*Id.* at 16 (citing R. at 503, 507, 500, 497, 494, 490, 485, 482, 479, and 599).) Additionally, Plaintiff

5

contends that the ALJ failed to consider her physical therapist's "observations of decreased hip strength bilaterally, struggling to perform straight leg raise testing, positive slouch testing, extreme obesity, increased spinal lordosis, anterior pelvic tilt, and tenderness to palpation." (*Id.* at 16 (citing R. at 386).) Finally, Plaintiff asserts that the ALJ failed to note Dr. Kort Gronbach's "observation of painful flexion of the spine, significantly limited and painful extension of the spine, and decreased patellar reflexes bilaterally." (*Id.* (citing R. at 445).)

The Commissioner counters that the ALJ evaluated both the abnormal and normal medical findings in the record and that his RFC determination is supported by substantial evidence. The Commissioner asserts that although an ALJ is not required to discuss every piece of evidence, a fair reading of the ALJ's decision shows that he discussed much of the specific evidence Plaintiff maintains he omitted, and, at the very least, discussed the treatment notes that contain the purportedly ignored evidence. (Def.'s Mem. in Opp. at 6-7, ECF No. 21.) The Commissioner further posits that "the ALJ's approach can more accurately be characterized as weighing the record evidence." (*Id.* at 7.) The undersigned agrees with the Commissioner and finds Plaintiff's contention of error to be without merit.

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09CV000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

It is well established that an ALJ is not required to "discuss every piece of evidence in the

6

record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)). The Sixth Circuit has further explained that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999) (citations and internal quotation marks omitted)).

Moreover, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.").

Here, although the ALJ did not address every piece of evidence in the record, his factual findings reveal that he considered the record as a whole and did not "cherry pick" the medical evidence to support his RFC determination. In fact, the ALJ explicitly discussed many abnormal medical findings, including findings that Plaintiff asserts he ignored. For example, the ALJ noted that Plaintiff had subjective tenderness, reduced and limited range of motion, subjective pain, subjective tenderness to palpation, painful extension of her lumbar spine,

7

positive straight-leg raise test, positive Patrick's test, decreased strength, decreased deep tendon reflexes, decreased sensation, palpable trigger points, difficulty raising from a seated position, antalgic gait, and moderate difficulty transitioning from sitting to standing. (R. at 17-18.) The ALJ also noted, however, that on various occasions Plaintiff had normal neurological examinations, the ability to move all extremities without difficulty, normal strength, normal flexion, negative straight-leg raise tests, 5/5 muscle strength, intact sensation, 2+ reflexes, no trigger points, no tenderness, and a full range of motion. (*Id*. at 19.) Further, the ALJ explicitly considered Plaintiff's obesity. (*Id.*) ("In addition to the foregoing conditions, the [ALJ] also considered the [Plaintiff's] obesity and hypertension in assessing her residual functional capacity. The limitation to a reduced range of sedentary reasonably accommodates these impairments.").) With respect to her gait, Plaintiff correctly points out that the ALJ erred in stating that CNP Easterday's records from September 2015 to June 2016 noted no gait problems. (Pl.'s Statement of Errors at 16, ECF No. 15) (citing R. at 507, 503, 500, 497, 494, 490, 485, 482, 479, 599).) This error, however, is harmless, as the ALJ considered that Plaintiff had an antalgic gait in other parts of his decision, and, in assessing her RFC, determined that she "needs a cane for ambulation" and is limited to standing and walking "for 15 minutes at one time for a total of 2 hours in an 8-hour work day." (R. at 16-18.)

The undersigned concludes that the ALJ's discussion of the medical evidence sufficiently supports his conclusion that Plaintiff is capable of performing a significantly reduced range of sedentary work. Although substantial evidence may also support an alternative finding, the ALJ's findings were within the ALJ's permissible "zone of choice," and the Court will not re-weigh the evidence. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009);

8

*DeLong*, 748 F.3d at 726; *White*, 572 F.3d at 284.

B.  **Activities of Daily Living**

Plaintiff also asserts that the ALJ neglected to discuss certain limitations Plaintiff reported with respect to her activities of daily living. (Pl.'s Statement of Errors at 17-18, ECF No. 15.) She asserts that the ALJ ignored the following notes from her physical therapy evaluation:

> She reports her left leg goes to sleep if she sits for too long 10-15 mins. Her back pain is constant and her leg pain is intermittent. She [i]s unable to clean 1 room in her house before her back hurts so bad she needs to sit down. She is unable to walk through Walmart and needs to use a motorized scooter as a result of her back pain.

(*Id.* at 17, ECF No. 15 (citing R. at 385).) Plaintiff also submits that the ALJ neglected to note that she takes a long time to do household chores, does not drive far because she cannot sit for long, takes 15-20 minute breaks between household chores to sit down and rest, has trouble getting up the stairs in her home, can stand 20 minutes if she is able to lean on something like a counter or a cane, cannot stand up straight on some days because of her back pain, uses her cane all the time, uses a motorized scooter for shopping, and wakes up one or two times throughout the night due to back pain. (*Id.* at 17-18.)

The undersigned is not persuaded that the ALJ cherry picked or otherwise mischaracterized Plaintiff's activities of daily living in reaching his RFC determination. In assessing Plaintiff's RFC, the ALJ properly considered Plaintiff's activities of daily living and her testimony regarding her symptoms and limitations. The ALJ concluded that Plaintiff's testimony was not fully supported by the evidence and that her subjective complaints did not support further limitations in the RFC. (R. at 22.) As set forth above, in reaching this

conclusion, the ALJ was not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner*, 658 F. App'x at 254 (citations omitted). Nevertheless, the ALJ offered the following lengthy discussion of Plaintiff's testimony and activities of daily living in which he found that she is not as limited as she alleged:

> At the hearing, the [Plaintiff] testified she cannot work due to lower back pain that goes all the way across her back. She testified she can only sit for 15 to 20 minutes at a time and cannot stand long, maybe 20 minutes at most. She said her pain "creeps up" her back once or twice a week and travels down her legs and hips once every two weeks. The [Plaintiff] noted she uses a cane to ambulate. Mentally, the [Plaintiff] testified she experiences anger and wants to isolate.
>
> After careful consideration of the evidence, the [ALJ] finds that the [Plaintiff's] medically determinable impairments could reasonably be expected to produce the above alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision. Accordingly, these statements have been found to affect the [Plaintiff's] ability to work only to the extent they can reasonably be accepted as consistent with the objective medical evidence and other evidence.
>
> \* \* \*
>
> The [ALJ] also considered the [Plaintiff's] activities of daily living. During a physical therapy evaluation in January 2015, the [Plaintiff] reported she cleaned her house every morning and then got on the computer in the afternoon (Exhibit 5F). In May 2015, the [Plaintiff] said she did all the transporting and getting groceries because she was the only one with a car. She also said she did the dishes, played games, and spent time on Facebook (Exhibit 8F, p. 24). In August and September 2015, the [Plaintiff] indicated she went to junkyards to get stuff for money (Exhibit 8F, p. 14 and 16). The [Plaintiff] also said in October 2015 that she took her family to work and to the store (Exhibit 8F, p. 10). She further reported in December 2015 that she was going to make Christmas cookies and ornaments. She also said she talked quite a bit on the phone with her sister (Exhibit 15F). In January 2016, she noted they made 500 Christmas cookies over three days (Exhibit 15F, p. 17). During another appointment in January 2016, the [Plaintiff] said she had watched her grandbabies that day and played games with them. She also noted she was driving whomever needed a ride to and from work and getting to her appointments. The [Plaintiff] further remarked that she had been busy going out to food banks and the grocery store (Exhibit 15F, p. 15). In February, March, and May 2016, the [Plaintiff] indicated she had been able to have

parties, such as Thirty-One party, a Tupperware party, and a Pampered Chef party (Exhibit 15F, pp. 7, 9, and 11). The [Plaintiff] again noted in June 2016 that she had been watching her grandchildren quite a bit and driving everyone to where they needed to be (Exhibit 15F, p. 5).

At the hearing, the [Plaintiff] testified she does dishes, wipes off counters and the table, puts dishes away and sweeps in the morning off and on. She also said she can run to the store real quick [i]f she needs to. The [Plaintiff] further remarked that she read a book and listens to the television. These activities are not inconsistent with the residual functional capacity assessed herein.

* * *

In summary, while the [Plaintiff] has medically determinable impairments that could reasonably cause some symptoms and limitations, the above evidence shows that the [Plaintiff's] testimony regarding the extent of such symptoms and limitations is not fully supported. However, the [Plaintiff's] complaints have not been completely dismissed, but rather, have been included in the residual functional capacity to the extent that they are consistent with the evidence as a whole. Nevertheless, in considering the criteria enumerated in the Regulations, Rulings, and case law for evaluating the [Plaintiff's] subjective complaints, the [Plaintiff's] testimony was not persuasive to establish an inability to perform the range of work assessed herein. The location, duration, frequency, and intensity of the [Plaintiff's] alleged symptoms, as well as the precipitating and aggravating factors are adequately addressed and accommodated in the above residual functional capacity.

As the subjective complaints in the record do not support further reduction of the established residual functional capacity, the [Plaintiff] retains the residual functional capacity as described above.

(R. at 17, 20-22.) The undersigned finds no error with the ALJ's consideration of Plaintiff's activities of daily living in evaluating Plaintiff's allegations and formulating her RFC. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 532 (6th Cir. 1997) ("An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.").[2]

---

2 Plaintiff does not challenge the ALJ's credibility determination, and the undersigned declines to disturb it. *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997) ("[I]ssues adverted to

In summary, substantial evidence supports the ALJ's RFC determination, and he did not err in his consideration or discussion of the record evidence. As explained above, the undersigned will not re-weigh the evidence where the ALJ's findings were within the permissible "zone of choice." *See Blakley*, 581 F.3d at 406; *DeLong*, 748 F.3d at 726; *White*, 572 F.3d at 284. Accordingly, it is **RECOMMENDED** that Plaintiff's contention of error be **OVERRULED**.

## IV. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive

---

in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citations omitted)); *see also Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)).

12

further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                          /s/ *Chelsey M. Vascura*
                                          CHELSEY M. VASCURA
                                          UNITED STATES MAGISTRATE JUDGE